JOURNAL ENTRY and OPINION
{¶ 1} Appellant Peter Lavrisiuk appeals the decision of the Probate Court of Cuyahoga County, which set aside three joint and survivorship accounts in his and his deceased mother's name on the grounds that he exerted an undue influence over her. On appeal, he assigns the following errors for our review:
"I. The trial court committed reversible error when it found that a fiduciary relationship existed between the decedent and her son Peter."
"II. The trial court committed reversible error when it held that the decedent's son had not rebutted the presumption of undue influence."
 {¶ 2} Having reviewed the record and applicable law, we affirm the judgment of the court. The apposite facts follow.
 HIS ACTS DEFINED HIS STATUS {¶ 3} At the age of ninety-three, Galina Lavrisiuk died. Galina Lavrisiuk left her estate to three of her four sons, equally.[1] She disinherited her fourth son, Nicholas.
 {¶ 4} Appellee William Landin, as executor of the estate, filed a complaint for declaratory judgment seeking to set aside three joint and survivorship accounts in the name of Galina Lavrisiuk and Peter Lavrisiuk. William Landin alleged that the three accounts should be set aside because they were the product of Peter's undue influence over their mother; therefore, he asked the court to declare the accounts' assets of the estate.
 {¶ 5} At the magistrate's hearing, Peter Lavrisiuk testified he was the eldest of Galina Lavrisiuk's four sons. Peter Lavrisiuk testified that in 1950, he, along with his mother, father, and three brothers, emigrated to America from Russia.
 {¶ 6} Following the death of his father in 1992, his mother, then age 84, became heavily reliant on her sons for the administering of her daily medicine, food preparation, transportation, banking, and medical needs. Peter Lavrisiuk stated that in the last seven years of his mother's life, he became her primary care provider.
 {¶ 7} Further, in 1992, his mother established three joint certificate of deposits, one with each son. During the following five years, his mother routinely transferred funds into and out of the three accounts in an attempt to make them as equal as possible upon her death. Upon her death, the respective values were $41,507, $42,413 and $42,171.
 {¶ 8} Additionally, Peter Lavrisiuk testified about the three disputed accounts. According to Peter Lavrisiuk, in 1996, his mother established a fourth joint and survivorship account with him. She deposited her social security payments, her pension from Keybank, and a monthly payment she received from Germany into this account. In 1997, his mother established a fifth joint and survivorship account with him. He explained that his mother established this certificate of deposit in an attempt to earn a higher interest rate. In 2000, his mother established a sixth joint and survivorship account with him, when he repaid $10,000 he had borrowed from her two weeks earlier to purchase a truck. He stated the three accounts totaled approximately $75,159 at the time of his mother's death.
 {¶ 9} Peter Lavrisiuk also testified that in 1997 his mother gave him power of attorney over her affairs. However, he had been doing most of the powers granted in the formal power of attorney long before it was executed. In addition, he took his mother to the doctor, the bank, the church, and to shop for food and clothing.
 {¶ 10} William Landin testified that, beginning in 1996, he and his brothers noticed that their mother had become forgetful. He recalled that his mother had seemed confused. He noticed this in the year she sued Mary Korneva, a Russian immigrant who had been living with her. She sued her to recover money Korneva had stolen from her. William Landin, along with his brothers, concluded their mother was losing the capacity to handle her financial affairs. This was further compounded by her failing eyesight.
 {¶ 11} Consequently, he and his brothers asked their mother to allow one of them to assist with her finances. William Landin asked not to be included, because he lived more than an hour away. His brothers, Peter and John, lived five minutes away and were available for the task. William Landin opined that his brother John was not chosen because he had been handling both their mother's and father's affairs since the early 1960s, but because he was about to retire and would have more time to devote to the task.
 {¶ 12} In testifying about the disputed accounts, William Landin stated that his mother was very open with her sons about her finances. It was commonly understood that at their mother's death, all the monies in the various bank accounts would be split equally between him and his two brothers. William Landin stated that in 1996, before the first of the three disputed accounts was established, his brother Peter promised their mother, in his presence, that upon her death he would split the money equally between them.[2]
 {¶ 13} Finally, William Landin testified that he, his brother John, and his mother absolutely trusted Peter. It was because of this trust, that their mother turned all her financial affairs over to Peter.[3]
 {¶ 14} John Lavrisiuk also testified regarding the disputed accounts. According to John, the only reason their mother put Peter's name on the accounts was that he was the oldest, and she trusted him to split the monies equally between him and his brothers.
 {¶ 15} After the hearing, William Landin filed a post hearing memorandum of facts and law. On March 8, 2004, the magistrate entered its decision in favor of William Landin, finding that a fiduciary relationship existed between Peter Lavrisiuk and his mother, which gave rise to a legal presumption of undue influence with respect to the three joint accounts. The magistrate further found that Peter Lavrisiuk had failed to meet his burden of coming forward with documentary evidence to rebut the legal presumption of undue influence. Consequently, the magistrate ordered Peter Lavrisiuk to return the monies from the disputed accounts to his mother's estate.
 {¶ 16} On April 7, 2004, Peter Lavrisiuk filed his objections to the magistrate's decision, but failed to attach a transcript of the evidence presented, and an affidavit to support his objections. On May 26, 2004, William Landin filed his opposition to Lavrisiuk's objections. On June 3, 2004, the probate court overruled Peter Lavrisiuk's objections and ordered him to return $75,159 to his mother's estate. Peter Lavrisiuk now appeals.
 SET-OFF ARGUMENT {¶ 17} During oral argument, Peter's attorney argued the disputed accounts are set-off by the testation of the York Road property to the two other sons. Factually, Peter's lawyer's conclusion is not supported by the record. In fact, it was never argued at trial that the York property was a set-off for the accounts that Peter received.
 {¶ 18} At the hearing, William Landin testified, and it is undisputed that when his parents bought the land on York Road to build a house, they owned a house on West 54th Street in Cleveland. They asked his brother Peter to contribute to the building of the York Road house, by way of a loan. Peter refused. Instead, he suggested that they sell him the house on West 54th Street. The parents agreed, and sold him the house for $50,000, even though it was valued at $100,000. They used the sale proceeds toward building the house on York Road.
 {¶ 19} William Landin further testified that his brother John, who did the actual construction of the house on York Road, contributed the balance of the money. In return for his contribution, John received a one-half interest in the York Road property. It was also agreed that the other half interest would go to Landin upon the death of his parents.[4]
It appears that the York Road property was a set-off for the interest that Peter received in the West 54th Street property. Consequently, we are not persuaded that the York Road property constituted a set-off for the three disputed accounts.
 MANIFEST WEIGHT, FIDUCIARY RELATIONSHIP {¶ 20} In his first assigned error, Peter Lavrisiuk argues that the trial court's finding that a fiduciary relationship existed between him and his deceased mother was against the manifest weight of the evidence.
 {¶ 21} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in a criminal context.[5] We must presume the fact finder's findings were correct.[6] This presumption stems from the fact finder's unique opportunity to use its observations of the witnesses to aid in making credibility assessments and resolving conflicting testimony.[7] As long as there exists competent and credible evidence in the record to support the fact finder's decision, it will not be reversed as against the manifest weight of the evidence.[8]
 {¶ 22} In Ohio, the law is that the opening of a joint and survivorship account, in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent, is conclusive evidence of the intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at the decedent's death.[9]
 {¶ 23} It is equally the case under Ohio law that where a fiduciary relationship exists between a creator of a joint and survivorship account and a survivor beneficiary, there is suspicion that the transaction resulted from undue influence and a presumption of undue influence arises.[10] Once this presumption arises, the burden of going forward with evidence shifts to the beneficiary to show that his conduct was free of undue influence.[11]
 {¶ 24} In the instant case, the record reveals that in 1997, Peter Lavrisiuk was given power of attorney over his mother's affairs. It is well settled that the holder of a power of attorney has a fiduciary relationship with the principal. Such a relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another by virtue of this special trust.[12] In such a relationship, the person who holds the power of attorney bears the burden of proof on the issue of the fairness of the transaction.[13]
 {¶ 25} At the hearing, Peter Lavrisiuk admitted that he was already performing most of the powers granted in the formal power of attorney prior to its execution. He stated he had a close, helpful, and trusting relationship with his mother prior to the drafting of the power of attorney. Additionally, Peter Lavrisiuk testified he visited his mother daily, took her for doctor's visits, opened her mail, and wrote the checks for utility payments and medical bills. Further, the record indicates Peter Lavrisiuk was instrumental in, and facilitated the drafting of, the power of attorney and the will his mother executed. Finally, Peter Lavrisiuk's brothers testified that they and their mother had absolute trust in him.
 {¶ 26} Based upon a thorough review of the record and transcript on appeal, the evidence indicates that Peter Lavrisiuk's mother had come to rely upon him for conducting her affairs. A fiduciary relationship existed between mother and son, which continued until her death. This fiduciary relationship gave rise to the three disputed accounts. Thus, the evidence supports the magistrate's finding that a fiduciary relationship existed. Accordingly, we overrule Peter Lavrisiuk's first assigned error.
 REBUTTING THE PRESUMPTION OF UNDUE INFLUENCE {¶ 27} In the second assigned error, Peter Lavrisiuk argues the trial court erred in finding that he had not rebutted the presumption of undue influence. We disagree.
 {¶ 28} Undue influence is defined as "any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and she is induced to do or forbear an act which she would not do or would do if left to act freely."[14]
 {¶ 29} Undue influence must be proven by clear and convincing evidence. In order to make the requisite showing of undue influence, four essential elements must be proven. The necessary elements include proof that: (1) an individual was susceptible to undue influence; (2) another person had an opportunity to exert undue influence over the susceptible individual; (3) improper influence was exerted or attempted; and (4) the result shows the effect of such influence.[15]
 {¶ 30} In the first assigned error, we concluded that the trial court correctly found that a fiduciary relationship existed between Peter Lavrisiuk and his mother. And, as previously noted, the existence of a fiduciary relationship between the creator of a joint and survivorship account and a beneficiary creates a presumption of undue influence, which shifts the burden to the beneficiary to present evidence that his conduct was free of undue influence or fraud.[16] The issue then is whether Peter Lavrisiuk successfully rebutted the presumption of undue influence on his part. We conclude he did not.
 {¶ 31} Peter Lavrisiuk offered no evidence to show that his inheritance of an additional $75,159 more than his two brothers was part of his mother's intent. From the record before us, the evidence is to the contrary. In 1992, following the death of her husband, Galina Lavrisiuk opened three joint certificates of deposits, one with each son. During the following five years, in concert with her intentions to divide her assets equally between her three sons, Galina Lavrisiuk worked diligently at transferring funds into and out of these accounts so that they would be as equal as possible. Upon her death, the three accounts had substantially equal values of $41,507, $42,413 and $42,171, respectively.
 {¶ 32} Additionally, Galina Lavrisiuk executed two wills in her lifetime. In the first will, drafted in 1997, she left her entire estate equally to her three sons. Again, in the will drafted in 2000, which was admitted to the probate court, she left her entire estate to be shared equally between her three sons. This clearly evinces Galina Lavrisiuk's desire for her sons to share equally in her estate.
 {¶ 33} Moreover, Peter Lavrisiuk failed to present any evidence why his mother did not deposit the additional sums into the joint account she established with him in 1992. If Galina Lavrisiuk wanted her son Peter to have more than his two brothers, she could have easily deposited the additional sums into the existing account.
 {¶ 34} Consequently, the trial court correctly found that Peter Lavrisiuk failed to overcome the legal presumption of undue influence. Accordingly, we overrule Peter Lavrisiuk's second assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellants his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Probate Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Calabrese, Jr., J., concur.
[1] The four sons are: Peter, John, William, and Nicholas. John is also known as Ivan, and William changed his last name from Lavrisiuk to Landin.
[2] Tr. at 82.
[3] Tr. at 94.
[4] Tr. at 100-102.
[5] In re: Washington (May 10, 2001), Cuyahoga Co. App. Nos. 77872 
77888, citing In re: Ozmun (Apr. 14, 1999) 9th Dist. No. 18983.
[6] Intrinsics Int'l v. Coopers Lybrand (July 13, 2000), Cuyahoga App. No. 76516.
[7] Id. See, also, Leslie v. Briceley (Dec. 31, 1997), 4th Dist. No. 97CA10, appeal dismissed (1998), 81 Ohio St.3d 1497.
[8] C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, at syllabus; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80;Intrinsics Int'l, supra. See Myers v. Garson (1993), 66 Ohio St.3d 610,614.
[9] Wright v. Bloom (1994), 69 Ohio St.3d 596.
[10] Studniewski v. Krzyzanowski (1989), 65 Ohio App.3d 628.
[11] Id.
[12] In re Scott (1996), 111 Ohio App.3d 273, 276, citing toStone v. Davis (1981), 66 Ohio St.2d 74.
[13] Testa v. Roberts (1988), 44 Ohio App.3d 161.
[14] Ross v. Barker (1995), 101 Ohio App.3d 611, citing Marich v.Knox Cty. Dept. Of Human Serv. (1989), 45 Ohio St.3d 163, 543 N.E.2d 776.
[15] West v. Henry (1962), 173 Ohio St. 498.
[16] Corrigan v. Coughlin, (1983), 11 Ohio App.3d 176.