SULL, Appellees,

v.

KAIM et al., Appellants.

[Cite as *Sull v. Kaim,* 172 Ohio App.3d 297, 2007-Ohio-3269.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88541.

Decided June 28, 2007.

Russell S. Bensing and Michael P. O'Malley, for appellees.

James E. Kovac, for appellant Charles A. Kaim.

KENNETH A. ROCCO, Judge.

{¶ 1} Defendant-appellant Charles A. Kaim appeals from common pleas court judgments finding him liable to plaintiffs-appellees for compensatory damages in the amount of $350,000, as well as $73,039.33 in prejudgment interest, $60,000 in punitive damages, and $161,013.11 in attorney fees. He urges that the court lacked jurisdiction over plaintiffs' claims for interference with their expectancy of an inheritance, that plaintiffs lacked standing to assert their claims, that Kaim was deprived of discovery because no estate representative was ever appointed for the decedent, that there was insufficient evidence to support the trial court's judgment, and the trial court erred in the admission and exclusion of evidence. We find no error in the trial court's proceedings and affirm the judgment below.

## Procedural History

{¶ 2} The complaint in this case was originally filed on November 17, 2004, and was amended three times with leave of court, the last time on May 18, 2005. The third amended complaint asserted claims against appellant and his employer, Metlife, Inc., on behalf of plaintiffs-appellees, Kenneth, Norman, James, and Carole Sull; Sister Mary Celeste, f.k.a. Celeste Brej; Crystal Cowan; David T. Heim Jr.; Rose Swigonski; and St. John Cantius. Plaintiffs claimed that they were beneficiaries of the will and revocable trust of Pauline Josephine Kaminski, who died testate on July 29, 2004. They claimed that Kaim wrongfully converted some $350,000 that belonged to Kaminski, fraudulently induced Kaminski to transfer the funds to him, and obtained the funds through the exercise of undue influence upon Kaminski, thus intentionally interfering with plaintiffs' expectancy of an inheritance from Kaminski. Plaintiffs further claimed that Metlife was liable for Kaim's actions through the doctrine of respondeat superior and that Metlife was negligent in failing to establish policies to prevent its agents from defrauding or improperly influencing clients or converting its clients' assets to their own use.

{¶ 3} Attached to the complaint was a copy of the last will and testament of Pauline Josephine Kaminski. Item II of the will leaves all of her tangible

personal property to Sister Mary Celeste, Theodore Z. Brej,[1] Rose Swigonski, and Norman, James, Carol, and Kenneth Sull. The residue of her estate was left to a revocable trust, to be administered according to the provisions of that trust.

{¶ 4} A copy of the trust document is also attached to the third amended complaint. Among other things, this trust provides that upon the grantor's death, the trust assets were to be divided equally into separate trusts for the benefit of Sister Mary Celeste, Theodore Brej, Rose Swigonski, Norman, James, Carol, and Kenneth Sull, and St. John Cantius.

{¶ 5} Kaim answered the third amended complaint, essentially denying any wrongdoing. He also asserted a counterclaim for defamation.

{¶ 6} The case ultimately proceeded to a jury trial beginning on March 28, 2006. At the conclusion of the plaintiffs' case, the court granted defendant Metlife's motion for a directed verdict with respect to plaintiffs' claim against it for negligent supervision. At the conclusion of the defendants' case, the court granted plaintiffs' motion for a directed verdict with respect to Kaim's defamation claim, but allowed a counterclaim to proceed for intentional infliction of emotional distress. The jury returned a verdict in favor of plaintiffs against both Kaim and Metlife on each of the claims that were submitted to it. In accordance with the jury's verdicts, the court entered judgment for plaintiffs and against Kaim and Metlife, jointly and severally, in the amount of $350,000. The court further awarded plaintiffs punitive damages against Kaim for $60,000. The court delayed any award of prejudgment interest and attorney fees.

{¶ 7} In separate orders entered May 26, 2006, and July 7, 2006, respectively, the court awarded plaintiffs prejudgment interest in the amount of $73,039.33 and attorney fees in the amount of $161,013.11.[2] Kaim now appeals from these orders. Metlife separately appealed, but its appeal was settled and dismissed after the trial court, on limited remand from this court, vacated the judgment against Metlife and dismissed the claims against it with prejudice based upon the parties' settlement.

### Law and Analysis

{¶ 8} In his first assignment of error, Kaim contends that the court did not have jurisdiction to decide plaintiffs' claim for interference with their expectancy of an inheritance. Kaim claims that because there was no probate court

---

1. Theodore Z. Brej predeceased Kaminski. The complaint alleges that plaintiffs Crystal Cowan and David Heim are his only lineal descendants.

2. Although not made clear by the orders of May 26 and July 7, in a subsequent order, the court specifically stated that the award of prejudgment interest was entered against both defendants and that the award of attorney fees was against defendant Kaim only.

determination that Kaminski's will and trust were valid, in order to decide whether plaintiffs had a legitimate expectancy of an inheritance, the court had to determine (implicitly) that these instruments were valid. Kaim argues that the probate court has exclusive jurisdiction to determine the validity of a will. Consequently, Kaim asserts, the common pleas court did not have jurisdiction to decide plaintiffs' claims.

{¶ 9} We find no legal support for Kaim's assertion that plaintiffs can demonstrate an expectancy of an inheritance only if they obtain a determination that the will is valid. Indeed, there is no procedure by which plaintiffs can obtain such a determination in the probate court. While a probate court has exclusive jurisdiction to take proof of wills, R.C. 2101.24, as a general matter, the court must admit to probate a will that appears on its face to comply "with the law in force at the time of the execution of the will in the jurisdiction in which it was executed, or with the law in force in this state at the time of the death of the testator, or with the law in force in the jurisdiction in which the testator was domiciled at the time of his death." R.C. 2107.18. There is no determination of issues like testamentary capacity and freedom from undue influence that might affect the validity of the will unless those issues are raised by a will contest. R.C. 2107.71. There is a statutory procedure by which a *testator* can obtain a declaration regarding the validity of his or her will while the testator is still living, but the testator's failure to obtain this declaration is not evidence that the will is invalid. See R.C. 2107.081. We are not aware of any procedure by which a beneficiary under a will may obtain a determination that the will is valid unless another party challenges the validity of the will. Cf. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708. It defies logic to argue that the plaintiffs must obtain a determination that is unavailable to them in order to succeed on the merits of their claim for interference with their expectancy of an inheritance.[3] Therefore, we overrule the first assignment of error.

{¶ 10} Kaim next argues that the plaintiffs lacked standing to pursue their claim, apparently because they have not demonstrated and cannot demonstrate the validity of the will and trust under which they claim. As discussed above, however, plaintiffs do not have to obtain a judicial determination that the will and trust are valid in order to pursue a claim for interference with the expectancy of an inheritance. Plaintiffs are named beneficiaries under Kaminski's will and trust. Therefore, they have standing to pursue their claims. We overrule the second assignment of error.

---

3. Moreover, a probate court has limited jurisdiction; it does not have jurisdiction to consider a claim for intentional interference with expectancy of an inheritance. *Hoopes v. Hoopes,* Stark App. No. 2006 CA 00220, 2007-Ohio-1582.

{¶ 11} Third, Kaim contends that he was unable to obtain discovery of Kaminski's medical information because no executor or administrator was appointed for her estate. Kaim does not point to any part of the record that shows that he requested and was denied discovery of relevant medical information about Kaminski from her physician. Accordingly, he has not demonstrated that any error or abuse of discretion occurred in the proceedings below.

{¶ 12} Fourth, Kaim asserts that the evidence was insufficient to support the verdicts against him and that the verdicts were against the manifest weight of the evidence. Kaim moved for a directed verdict at the close of plaintiffs' case. At the close of all the evidence, he also moved for a directed verdict, but only as to his counterclaim for defamation. Accordingly, Kaim failed to preserve his argument that the evidence was insufficient. *McKellips v. Indus. Comm.* (1945), 145 Ohio St. 79, 30 O.O. 300, 60 N.E.2d 667; *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 844, 649 N.E.2d 1247; *Neiswender v. Edinger* (1978), 59 Ohio App.2d 25, 13 O.O.3d 96, 392 N.E.2d 580.

{¶ 13} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. The essential elements of a claim for intentional interference with an expectancy of an inheritance are as follows: (1) plaintiffs have an expectancy of an inheritance; (2) defendant intentionally interfered with that expectancy; (3) the interference was caused by tortious conduct, such as fraud, duress, or undue influence; (4) it is reasonably certain that the expectancy of inheritance would have been realized but for defendant's interference; and (5) damages resulted from the interference. *Firestone v. Galbreath* (1993), 67 Ohio St.3d 87, 616 N.E.2d 202.

{¶ 14} First, the terms of the will and trust in themselves demonstrate that plaintiffs had the expectancy of an inheritance from Kaminski.[4] Kaim interfered with that expectancy by inducing Kaminski to transfer the $350,000 to him. While Kaim points to evidence that he was friends with the decedent for

---

4. {¶ a} Kaminski's will had not been submitted to probate at the time of trial, and thus none of her assets had actually passed to beneficiaries through her will. Intriguingly, however, it appears that most of her assets passed outside probate anyway. Sister Mary Celeste was the named beneficiary of Kaminski's annuities. Kaminski's nephew James Sull was co-owner of her bank accounts, and her nephew Kenneth Sull was co-owner of her home. It is unclear whether Kaminski had any other assets.

{¶ b} Based on this evidence, one might speculate whether the $350,000 would have been part of Kaminski's estate if Kaminski had not transferred it to Kaim. However, such an inquiry would be mere speculation. The jury could not have reasonably assumed that Kaminski would have given those funds to someone else if they had remained in her bank account. The only reasonable inference is that the funds would have been part of Kaminski's estate if she had not transferred them to Kaim.

many years before her death, the jury did not clearly go astray by rejecting his assertion that the money was a gift to him. Sister Mary Celeste testified that she overheard Kaim say to Kaminski, "Don't give the money to the government because the government has enough money. Give me the money." Kaminski then wrote a check and gave it to Kaim. Kaim took it and promised that he would give money to Sister Mary Celeste every month. This testimony provides competent, credible evidence that Kaminski did not intend the money as a gift to Kaim.

{¶ 15} Furthermore, Kaminski was 93 years old at the time of this transfer. Her nephew, plaintiff Kenneth Sull, testified that her health had declined after her husband passed away in 2001. Another nephew, James Sull, testified that Kaminski feared that she would lose everything she had if she had to go into a nursing home. This testimony provided competent, credible evidence that Kaminski's fear, together with her advanced age and declining health, made her subject to undue influence and fraud. There was competent, credible evidence from which the jury could have determined that Kaim induced Kaminski to give him the money by promising to protect it from the government and use it to support Sister Mary Celeste and that this promise was false because (1) Kaim actually used most of the money to purchase an annuity for himself and to pay his substantial debts and (2) his promised payments to Sister Mary Celeste ended when Kaminski died.

{¶ 16} There was competent credible evidence that it was reasonably certain that the plaintiffs would have realized their expectancy of an inheritance if not for Kaim's interference. Kaminski was extremely frugal; it was unlikely that she would have expended the funds during her lifetime. Accordingly, we believe that competent, credible evidence supported the verdict.

{¶ 17} In his final assignment of error, Kaim argues that the court was biased against him and made erroneous rulings regarding the admission and exclusion of evidence. In addition, he complains that the court failed to give his requested jury interrogatories and denied his motion for a protective order to prevent his deposition in aid of execution. Kaim does not explain why any of these rulings were an abuse of the court's discretion or, more important, how he was prejudiced by them. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. Therefore, we reject Kaim's blanket assertion that these rulings were erroneous.

Judgment affirmed.

GALLAGHER, P.J., and BLACKMON, J., concur.