[Cite as *Guardianship of Pieper*, 2014-Ohio-5195.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|  |  |  |
|---|---|---|
| GUARDIANSHIP OF: | : | |
| ROBERT M. PIEPER | : | CASE NO. CA2013-11-010 |
| | : | O P I N I O N<br>11/24/2014 |
| | : | |
| | : | |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2009002

Dearie & Fischer LLC, John A. Fischer, Greene Town Center, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440, for appellant

Hochwalt & Schiff, LLC, Thomas R. Schiff, 500 Lincoln Park Blvd., Suite 216, Kettering, Ohio 45429, for appellee

**RINGLAND, P.J.**

{¶ 1} Appellant, Roger Perry, the former guardian of Robert M. Pieper, appeals the judgment of the Preble County Common Pleas Court, Probate Division, ordering him to pay, in his individual capacity, $1,923.09 to appellee, Attorney Thomas R. Schiff, for legal services appellee performed in connection with appellant's guardianship of Pieper. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Appellant was married to a woman who had a minor son, Pieper, from a

previous relationship. The woman died in 2007. Pieper, who was then a minor, decided that he wanted appellant to be his guardian. Appellant hired appellee to provide legal services to him with respect to his guardianship of Pieper. In 2009, appellee, acting on appellant's behalf, filed an application requesting that appellant be appointed as guardian of Pieper's person and estate, and the application was granted. A joint account in the name of both appellant and Pieper was established for the guardianship. At one time, the joint account held approximately $20,000. The funds in the account came from various sources, including monies from a death benefit offered by appellant's deceased wife's employer. A guardianship account solely in Pieper's name was never established.

{¶ 3} On August 13, 2010, Joseph E. Renner and Elaine A. Renner, who were friends of Pieper's family, filed an "Ex Parte Motion Requesting Reallocation of Parental Rights and Responsibilities" in the Preble County Common Pleas Court, Case No. 20074279.[1] The Renners sought to have appellant removed as Pieper's guardian and to have themselves named as Pieper's successor guardians. The Renners' request was granted. On that same day, the Renners permitted Pieper to withdraw the remaining funds in the joint account that totaled more than $19,000. The Renners had Pieper place the money in a new account. On August 19, 2010, appellee, acting on appellant's behalf, filed in Case No. 20074279 a "Motion to Escrow Funds," requesting that the funds removed from the joint account by Pieper, with the Renners' consent, be placed in escrow, since the majority of those funds belonged to appellant. The motion was granted, and the funds were transferred to an escrow account. On November 23, 2010, the Renners were appointed by the trial court

---

1. The Renners originally brought their ex parte motion in Case No. 20074279 in the *juvenile* division of the Preble County Court of Common Pleas. At some point, however, the case was transferred to the common pleas court's *probate* division. This court has not been provided with the record in Case No. 20074279. The information that we have on that case has been taken from appellee's representations in his brief and from copies of some of the filings and entries in Case No. 20074279 that appellee attached as exhibits to his brief. Appellant has not challenged the factual accuracy of any of these representations, filings or entries.

- 2 -

in the current action (Case No. 20092002) as successor guardians of the person and estate of Pieper.

{¶ 4} On January 20, 2011, appellee filed an application for attorney fees, seeking attorney fees and court costs of $1,923.09, "to be paid out of The Guardianship of Robert M. Pieper." Appellant signed appellee's application for attorney fees as "ROBERT PERRY, Guardian." On January 21, 2011, appellant filed a "Second and Final Account," which listed "Attorney Fees" of $1,923.09 as one of the disbursements made from the guardianship's estate.

{¶ 5} On March 14, 2011, the magistrate filed an entry that "RECOMMENDED AND ORDERED * * * that The Application for Attorney Fees and the Second and Final Account * * * should be and hereby are approved." At the same time, the magistrate also filed an "ENTRY APPROVING AND SETTLING ACCOUNT" that stated that "[t]he estate has been fully and lawfully administered, and the assets have been distributed in accordance with the law or the applicable instruments governing distribution." The entry also discharged appellant as fiduciary of the guardianship's estate. The entry approving and settling the account was signed by the trial court's magistrate on a signature line that had the words, "Probate Judge Wilfrid G. Dues[,]" printed underneath it.

{¶ 6} On June 22, 2011, an "Agreed Entry and Order" was filed in Case No. 20074279 (see footnote 1), in which the Renners agreed to pay appellant $10,000 in settlement of his claim to a portion of the funds that the Renners had allowed Pieper to withdraw from the joint account. Appellant received his $10,000 settlement immediately.

{¶ 7} On May 23, 2013, appellee filed a "Motion To Show Cause [and] Request For Attorney Fees And Court Costs," requesting that the trial court find appellant in contempt "for not complying with the Entry and Order of the Court filed herein on March 14, 2011[,]" and to order appellant to pay him $1,923.09 in attorney fees "as approved by this Court on March

- 3 -

14, that he has not paid[.]"

**{¶ 8}** The trial court held a two-day hearing on appellee's motion. At the beginning of the hearing, the trial court stated that there was a "previous order" for appellant to pay attorney fees to appellee and that it already had approved the $1,923.09 in attorney fees that appellee had requested. When the trial court asked appellee if the attorney fees had been paid, appellee answered that they had not. When the trial court asked appellant for his response, appellant, who was acting pro se, stated that he and appellee had agreed that appellee would seek payment of his attorney fees from the guardianship of Pieper. In support of his claim, appellant cited appellee's January 20, 2011 application for attorney fees in which appellee requested attorney fees of $1923.09 "to be paid out of The Guardianship of Robert M. Pieper."

**{¶ 9}** Appellant also testified that he agreed to accept $10,000 in settlement of his claims against the Renners because appellee had advised him that it would cost him more money if he did not. Appellant testified that he told appellee, "I'll take the $10,000 settlement as long as this case is dismissed. You are to recei, [*sic*] you are to make application for all your attorney fees out of Robert's portion of the guardianship. And he so did agree." In response, appellee stated that while it was true that appellant agreed to accept the $10,000 to bring that case to conclusion, the rest of appellant's testimony was "an absolute, unequivocal lie." Appellee also stated that there was never an agreement between himself and appellant, *or* between himself and Pieper or the Renners or the Renners' attorney that the Renners or Pieper would be paying his fees. Appellant responded by stating, "that's a lie. I'm sorry but that is a bold lie." When the trial court asked appellant if the parties had any agreement in writing as to who would be paying appellee's attorney fees, appellant answered, "No neither one of us had an agreement in writing. I never signed anything. Neither did [appellee] give me anything to sign back with him."

- 4 -

{¶ 10} At the close of evidence, the trial court framed the question before it as being, "Who do I punish?" The trial court determined that appellant should be held responsible for paying appellee's attorney fees. The trial court based its determination primarily on the fact that appellant had received a "chunk of change" as a result of his $10,000 settlement with the Renners and what the trial court termed as "three years of house payments" from Pieper during the time appellant served as his guardian.[2] On October 15, 2013, the trial court issued a judgment entry ordering appellant to pay $1,923.09 to appellee for his attorney fees within 90 days of the date of the hearing.

{¶ 11} Appellant, who is now represented by counsel, appeals the trial court's October 15, 2013 judgment entry and assigns the following as error:

{¶ 12} THE TRIAL COURT ERRED BY ORDERING MR. PERRY TO PAY MR. SCHIFF'S LEGAL FEES.

{¶ 13} Appellant argues the trial court erred by ordering him to pay $1,923.09 in attorney fees to appellee for the legal services he performed regarding appellant's guardianship of Pieper, because the evidence presented to the trial court overwhelmingly shows that he and appellee orally agreed that appellee would seek payment of his attorney fees from the "Guardianship of Robert M. Pieper," and not from appellant personally.

{¶ 14} Appellee responds by arguing that the "sole issue" before the trial court was whether or not appellant should be held in contempt for violating the magistrate's March 14, 2011 entry, which, appellee describes as the "Court's Order." Appellee asserts that by signing his application for attorney fees, appellant "had already agreed that he owed $1,923.09 to [a]ppellee." At one point in his appellate brief, appellee asserted that the trial

---

2. The "three-years of house payments" to which the trial court alluded involves the fact that appellant charged Pieper rent and part of the utilities for the residence in which they lived. Appellant explained that he only began to charge Pieper for these things once their relationship deteriorated.

court "found [a]ppellant in contempt and ordered him to pay $1,923.09 to [a]ppellee within 90 days." However, during oral argument, appellee acknowledged that the trial court never actually found appellant in contempt for violating the magistrate's March 14, 2011 entry, and therefore appellee suggested that this court should remand the matter to the trial court to allow it to make that finding. We decline to do so.

{¶ 15} There must be a pre-existing court order before a party can be found to be in violation of a court order and held in contempt. *In re GMS Mgt. Co. Inc. v. Unpaid Court Costs, Fees and Delinquencies*, 187 Ohio App.3d 426, 2010-Ohio-2203, ¶ 23 (7th Dist.). Only a trial court judge, not a magistrate, may terminate a claim or action by entering judgment on the claim or action. *McCown v. McCown*, 145 Ohio App.3d 170, 172 (12th Dist.2001). Indeed, when a trial court judge refers a matter to a magistrate, the trial court judge *must* enter its own independent judgment disposing of the matters at issue between the parties. *Burns v. Morgan*, 165 Ohio App.3d 694, 2006-Ohio-1213, ¶ 9-10 (4th Dist.).

{¶ 16} Here, the trial court could not have found appellant in contempt for violating the magistrate's March 14, 2011 entry, since that entry was not the *trial court's* order. It is true that the trial court noted at the beginning of the hearing on appellee's motions for contempt and attorney fees that the record indicated that there was a "previous order" for appellant to pay attorney fees to appellee and that the trial court already had approved the $1,923.09 in attorney fees that appellee had requested. The "previous order" to which the trial court was referring was the magistrate's March 14, 2011 entry that recommended and ordered that appellee's application for attorney fees "should be and hereby [is] approved." However, the trial court failed to issue its own judgment entry showing that it had independently reviewed the magistrate's March 14, 2011 entry and that it was adopting that entry as the order of the court, as the trial court was required to do. *Id.* Consequently, appellant's alleged violation of the magistrate's March 14, 2011 entry could not have formed the basis of a contempt finding

against appellant. *In re GMS Mgt. Co. Inc.*

{¶ 17} Even if the trial court had approved the magistrate's March 14, 2011 entry and adopted the entry as the order of the court, there is no evidence that appellant violated any of the terms of that entry. The magistrate's March 14, 2011 entry stated that "IT IS HEREBY RECOMMENDED AND ORDERED:  that The Application for Attorney Fees [filed by appellee] * * * should be and hereby [is] approved."  However, appellee's application for attorney fees expressly stated that the attorney fees appellee sought were "*to be paid out of The Guardianship of Robert M. Pieper.*"  (Emphasis added.)  There is nothing in appellee's application for attorney fees that requests the trial court to hold appellant personally liable for appellee's attorney fees if there was no money remaining in the guardianship's accounts. Nor is there anything in the magistrate's March 14, 2011 entry that requires appellant to pay, in his individual capacity, appellee's attorney fees if there is no money remaining in the guardianship's accounts.  Thus, the magistrate's March 14, 2011 entry that recommended and ordered approval of appellee's application for attorney fees cannot be interpreted as an order requiring appellant, in his individual capacity, to pay appellee his attorney fees.[3]

{¶ 18} Turning now to appellant's argument that the trial court erred by ordering him, in his individual capacity, to pay appellee's attorney fees, appellant asserts that the evidence overwhelming shows that he and appellee orally agreed that appellee would seek reimbursement for his attorney fees from the guardianship of Pieper and not from him personally.  In support of this assertion, appellant points out that, in his application for attorney fees, appellee expressly stated that his attorney fees were "to be paid out of the

---

3. While the trial court was not permitted to find appellant in contempt for his alleged violation of the magistrate's March 14, 2011 entry, the trial court was permitted to rule on appellee's request for attorney fees.  See *In re Guardianship of McPheter*, 95 Ohio App.3d 440, 444-446 (6th Dist.1994) (probate court has exclusive jurisdiction, unless otherwise provided by law, as to all matters set forth in R.C. 2101.24 [now R.C. 2101.24*(A)*], all matters pertaining directly to the administration of estates, all matters pertaining to a guardian and his or her ward, and to all matters "'touching the guardianship,' *In re Rauscher* (1987), 40 Ohio App.3d 106, 108[.]").

Guardianship of Robert M. Pieper."  Appellant posits that had the parties agreed that appellant would pay appellee's attorney fees, then appellee would not have sought to have his attorney fees paid from the guardianship of Pieper.  Appellant also points out that appellee never testified that he and appellant agreed that payment of appellee's attorney fees would be appellant's personal responsibility.  Finally, appellant contends that this court must apply a "de novo" standard of review in ruling on his claim that the parties entered into an enforceable oral contract, and must not defer to the trial court's decision on this issue.

{¶ 19} As noted in *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3-4, 2002-Ohio-2985, ¶ 16:

> "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶ 20} The "[t]erms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'"  *Id.* at ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (1st Dist.1947), paragraph one of the syllabus.  "Interpreting the meaning and construction of contracts involves a question of law which appellate courts review de novo."  *McKenzie v. Cintas Corp.*, 136 Ohio St.3d 1475, 2013-Ohio-3790, citing *Northland Ins. Co. v. Palm Harbor Homes, Inc.,* 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655, ¶ 7.  "In applying this standard, [an appellate court is] not required to defer to the trial court's decision."  *Id.*, citing *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 11 (9th Dist.).

{¶ 21} Here, the questions in dispute between the parties do not involve the correct interpretation or construction of a term or clause in a contract.  Instead, they involve whether an oral contract *exists* between the parties, and if an oral contract does exist between the

parties, then what are its terms. Appellee argues that no oral contract exists between the parties, while appellant argues that an oral contract does exist between the parties and that under its terms, appellee is obligated to seek reimbursement for his fees *solely* from the guardianship of Pieper.

{¶ 22} It has been held that "'[t]he fact of the existence of a contract and the terms of an oral contract are ordinarily for the determination of the jury in light of the evidence offered, to be determined from all the facts, words, acts, conduct, and circumstances surrounding the parties at the time.'" *LaPoint v. Templeton*, 6th Dist. Fulton No. F-07-014, 2008-Ohio-1792, ¶ 35, quoting 89 Ohio Jurisprudence 3d, Trial, Section 178.

{¶ 23} Here, despite appellee's claims to the contrary, it is apparent that there was an unwritten agreement between the parties that called for appellee to perform legal services for appellant in exchange for appellee receiving a reasonable fee for those services. Additionally, appellant has not challenged on appeal the reasonableness of the amount of attorney fees that appellee requested.[4] Therefore, the only question that remains is whether appellee agreed to seek reimbursement of his attorney fees *solely* from the guardianship of Pieper.

{¶ 24} At the hearing held on appellee's motions, the trial court noted that while appellant claimed that he and appellee had orally agreed that appellee would seek payment of his attorney fees from the guardianship of Pieper, appellee denied that they had reached such an agreement. Therefore, the trial court essentially determined that appellant failed to prove his assertion that the parties had orally agreed that appellee would seek reimbursement of his attorney fees *solely* from the guardianship of Pieper and not from appellant personally.

---

4. Appellant did allege at the hearing that appellee incorrectly billed him for some of the legal services that appellee provided for him in the present action. However, appellant has not raised this issue on appeal.

{¶ 25} The existence of a term in an oral contract is ordinarily for the determination of the jury or a trial court judge acting in his or her role as trier-of-fact based upon the evidence offered, and the facts, words, acts, conduct, and circumstances surrounding the parties at the time. *LaPoint*, 2008-Ohio-1792 at ¶ 35. Here, the trial court, undoubtedly, was in the best position to make the determination as to whether or not the parties orally agreed that appellee would seek reimbursement of his fees solely from the guardianship of Pieper and not from appellant personally, because the trial court was in the best position to judge the credibility of both appellee and appellant when they testified about the existence or nonexistence of this alleged term in the parties' oral agreement.

{¶ 26} Appellant also argues that if this court determines that the parties agreed that appellant would pay for appellee's legal fees, then the trial court erred by failing to reform the oral contract in the face of his "unilateral mistake." However, appellant failed to raise this argument in the trial court. It is well settled that failure to call to the trial court's attention a possible error when the error could have been corrected or avoided altogether generally results in a waiver of the issue for purposes of appeal. *Hendrickson v. Parrett*, 12th Dist. Butler No. CA2014-01-010, 2014-Ohio-3997, ¶ 13. There is no reason not to apply this principle here, in light of the facts and circumstances of this case.[5]

{¶ 27} In light of the foregoing, appellant's assignment of error is overruled.

{¶ 28} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.

---

5. Surprisingly, neither the trial court nor the parties mentioned R.C. 2111.151(B), which provides that a guardian is not personally liable for any debt of the ward unless one or more of the circumstances listed in R.C. 2111.151(B)(1)-(4) applies, including whether the debt resulted from the guardian's negligence. R.C. 2111.151(B)(3). This is the provision the trial court should have used in determining if it was appropriate to hold appellant personally liable for appellee's attorney fees. However, as was the case with his "unilateral mistake" argument, appellant failed to raise this issue in the trial court, and therefore he has waived this issue for purposes of appeal. *Id.*